# Exhibit A

Michael R. Yellin, Esq. – Attorney ID#014712008
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
201-489-3000
201-489-1536 Facsimile
Attorneys for Plaintiff, Hoboken Holdings L.P.

| | |
|---|---|
| HOBOKEN HOLDINGS, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>ZORY CORT LLC (f/k/a SEG CORT LLC),<br>ZORY GROUP, INC. (f/k/a STEINER<br>EDUCATION GROUP, INC., STEINER<br>LEISURE LIMITED (also known as NEMO<br>MERGER SUB, INC.), NEMO PARENT,<br>INC., NEMO INVESTOR AGGREGATOR,<br>LIMITED, CATTERTON MANAGEMENT<br>COMPANY, L.L.C., d/b/a L CATTERTON,<br>JOHN DOE COMPANIES 1-10, fictitious<br>names of companies to be named in this<br>action, and JOHN DOE INDIVIDUALS 1-<br>10, fictitious names of individuals to be<br>named in this action,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br>DOCKET NO.<br><br>Civil Action<br><br>**COMPLAINT, DESIGNATION OF TRIAL<br>COUNSEL, AND CERTIFICATION<br>PURSUANT TO <u>RULE</u> 4:5-1(b)(2) AND<br><u>RULE</u> 1:38-7(b)** |

Plaintiff Hoboken Holdings, L.P. ("HHLP"), by way of its Complaint against defendants

Zory Cort LLC (f/k/a SEG Cort LLC) ("SEG Cort"), Zory Group, Inc. (f/k/a Steiner Education

Group, Inc.) ("Steiner Education"), Steiner Leisure Limited ("Steiner Leisure") (a/k/a Nemo

Merger Sub, Inc.), Nemo Parent, Inc. ("Nemo Parent"), Nemo Investor Aggregator, Limited

("Nemo Investor"), Catterton Management Company, L.L.C., d/b/a L Catterton ("L Catterton")

(Steiner Leisure, Nemo Parent, Nemo Investor, and L Catterton are collectively, the "Catterton

Entities"), John Doe Companies 1-10, and John Doe Individuals 1-10 (collectively, "Defendants") states and alleges as follows:

## INTRODUCTION

1.      HHLP seeks compensatory damages and other relief arising out of a well-orchestrated scheme by Defendants to fraudulently induce HHLP to enter into a lease modification and extension with Defendants' subsidiary, SEG Cort, that neither SEG Cort nor its parent company (and lease guarantor), Steiner Education, had the intention or financial means to pay.

2.      Defendants are the direct and/or beneficial owners of dozens of for-profit occupational schools operating under the brands "Steiner" and "Cortiva" that provide education in massage therapy and/or esthetics. Defendants' schools include a massage therapy School (defined below) that operated at HHLP's property located at Two Hudson Place, 2nd and 3rd Floors, Hoboken, New Jersey (the "Property") at various times from 2007 to 2019. During that time, SEG Cort (or its predecessors) occupied the Property as HHLP's tenant, with SEG Cort's direct parent company, Steiner Education, guaranteeing the lease obligations.

3.      In late 2018, certain Steiner/Cortiva branded schools began experiencing financial difficulty. As a result, the Catterton Entities, as well as SEG Cort and Steiner Education's directors and officers, began strategizing about potential "restructuring" and other means of addressing the precarious financial situation of those entities.

4.      In connection with those discussions, in late 2018 and early 2019, the Catterton Entities, which controlled Steiner Education and SEG Cort's operations, made the decision to close SEG Cort's School in Hoboken at the end of the Spring 2019 semester.

5.     Critically, however, because many "Steiner" and "Cortiva" branded entities were to continue operating, the Catterton Entities considered it essential that the wind down of SEG Cort be quietly accomplished.

6.     SEG Cort's lease, however, was a major impediment to the Catterton Entities' plans.  Specifically, the lease term was set to expire on February 28, 2019, several months *before* the Spring 2019 semester would end.  As a result, if the lease was not extended through June 2019, the School would need to close mid-semester, which would create significant bad press and expose Defendants to liability and, upon information and belief, difficulties maintaining licenses and accreditation to operate their other schools.

7.     To avoid the disastrous publicity and liability inherent with closing a school mid-semester, Defendants fraudulently induced HHLP to enter into a Fifth Modification of Lease, extending SEG Cort's lease term for another year, from May 1, 2019 through April 30, 2020.

8.     Defendants caused the Fifth Modification to be signed by SEG Cort, as tenant, and Steiner Education, as guarantor, notwithstanding the fact that neither entity intended to honor their contractual obligations.  Recent testimony[1] provided by Defendants' representatives in a related matter makes abundantly clear that SEG Cort and Steiner Education possessed neither the intention nor the financial means to pay HHLP for the new lease term.

9.     Defendants' testimony also makes clear that the Catterton Entities have exercised undue influence and control over Steiner Education and SEG Cort, and that neither of those entities was legitimately operating as a separate and distinct legal entity.  Neither Steiner Education nor

---

[1] Unless another citation is provided, quoted text throughout this Complaint is derived from the transcript of the August 5, 2019 Deposition of Robert Boehm, taken in connection with the ABC Proceeding (defined below).

SEG Cort was properly capitalized, nor did either entity (or their affiliates) have sufficient corporate controls in place to insulate them from Defendants' ill-conceived plan to avoid bad publicity.

10.     After the Hoboken School was closed, SEG Cort and Steiner Education's names were changed to Zory Cort, LLC and Zory Group, Inc., respectively.  According to Defendants' representative's recent testimony, these name changes were undertaken "[b]ecause [the companies'] private equity owners did not want to have a public record tying the Steiner or SEG name to [insolvency proceedings]."

11.     A few days after the name changes, SEG Cort and Steiner Education, among other related entities, commenced of certain assignments for the benefit of creditors in Florida (collectively, the "ABC Proceeding").

12.     Through this action, HHLP seeks to recover in excess of $500,000 in damages that have directly arisen from Defendants' fraudulent acts and omissions, as well as their breach of fiduciary duties and quasi-trust obligations to HHLP.

### THE PARTIES

13.     **Plaintiff, Hoboken Holdings, L.P.**

(a)     Plaintiff, HHLP, is a Delaware limited partnership having a mailing address care of National Realty & Development Corp., 3 Manhattanville Road, Suite 202, Purchase, New York 10577.  HHLP has owned the Property since 1998.

(b)     HHLP's general partner is HBK Holdings Corp, a Delaware corporation with its principal place of business located care of National Realty & Development Corp., 3 Manhattanville Road, Suite 202, Purchase, New York 10577.

4

(c)     HHLP is the fee owner of the Property and has, at all relevant times, served as landlord under the Lease (defined below) (as amended and modified).

14.     **Defendant, Zory Cort, LLC (formerly known as SEG Cort LLC)**

(a)     SEG Cort is a Florida limited liability company formed in 2011, with a principal place of business located at 770 South Dixie Highway, Suite 200, Coral Gables, Florida 33146.

(b)     SEG Cort has designated the following as its agent for service of process: Corporation Service Company, 121 Hays Street, Tallahassee, Florida 32301. By way of further background:

(c)     SEG Cort's sole member is Steiner Education (discussed below).

(d)     Upon information and belief, at all relevant times, SEG Cort's officers and directors were Mr. Leonard Fluxman, Mr. Stephen Lazarus, and Mr. Robert C. Boehm.

(e)     Mr. Boehm remains the Secretary of SEG Cort and recently provided testimony as SEG Cort's corporate representative in connection with SEG Cort's ABC Proceeding.

(f)     At all relevant times, SEG Cort was wholly owned by Steiner Education.

(g)     On July 5, 2019, SEG Cort's name was changed to Zory Cort, LLC. The next day, Zory Cort, LLC commenced the ABC Proceeding.

(h)     At all relevant times, SEG Cort (or its predecessor-in-interest) was the tenant under the Lease.

(i)     During that time in question, SEG Cort operated a massage therapy school at the Property.

(j)     The Catterton Entities exercise complete dominion and control over SEG Cort, to such an extent that any individuality or separateness of SEG Cort from the Catterton Entities does not exist and has not ever existed.

(k)     Indeed, SEG Cort serves as a mere shell, instrumentality, and conduit through which the Catterton Entities shielded their assets while simultaneously asserting complete dominion and control over SEG Cort.

(l)     At all relevant times, SEG Cort was, upon information and belief, grossly undercapitalized and lacked sufficient capital to satisfy the company's debts as they became due and otherwise lacked the financial wherewithal to sustain operations and satisfy financial obligations to creditors.

(m)     Upon information and belief, allowing the Catterton Entities to adhere to the separate existence of SEG Cort, as distinct from the constituent parts of the Catterton Entities, would serve only to sanction fraud and produce an inequitable result in that doing so would promote injustice.

15.     **Zory Group, Inc. (formerly known as Steiner Education Group, Inc.)**

(a)     Steiner Education Group, Inc. is a Florida corporation, with its principal place of business located at 770 South Dixie Highway, Suite 200, Coral Gables, Florida 33146.

(b)     Steiner Education has designated the following as its agent for service of process: Corporation Service Company, 121 Hays Street, Tallahassee, Florida 32301.  By way of further background:

(c)     Steiner Education was formed on June 29, 1999 by filing Articles of Incorporation with the State of Florida.

(d)     Steiner Education's officers and directors include Mr. Fluxman (President), Mr. Lazarus (Director, Chief Financial Officer), and Mr. Boehm (Secretary).

(e)     On July 5, 2019, Steiner Education Group, Inc. filed Articles of Amendment to its Articles of Incorporation, changing its name from Steiner Education Group, Inc. to Zory Group, Inc. The next day, Zory Group, Inc. also joined the ABC Proceeding.

(f)     At all relevant times, Steiner Education was the guarantor of SEG Cort's obligations under the Lease.

(g)     The Catterton Entities exercise complete dominion and control over Steiner Education, to such an extent that any individuality or separateness of Steiner Education from the Catterton Entities does not, and has not, ever existed.

(h)     Indeed, Steiner Education serves as a mere shell, instrumentality, and conduit through which the Catterton Entities shielded their assets while simultaneously asserting complete dominion and control over Steiner Education.

(i)     At all relevant times, Steiner Education was, upon information and belief, grossly undercapitalized and lacked sufficient capital to satisfy the company's debts as they became due and otherwise lacked the financial wherewithal to sustain operations and satisfy financial obligations to creditors.

(j)     Upon information and belief, allowing the Catterton Entities to adhere to the separate existence of Steiner Education, as distinct from the constituent parts of the Catterton Entities, would serve only to sanction fraud and produce an inequitable result in that doing so would promote injustice.

16. **Steiner Leisure Limited (also known as Nemo Merger Sub., Inc.)**

(a)     Steiner Leisure is self-described as "a global provider of spa services and operations, a manufacturer and distributor of premium skin, body and hair care products and an accredited educator teaching students the skills necessary to be a spa professional, including massage, skincare and spa management."

(b)     Steiner Leisure is an international business company formed in 1995 and incorporated under the laws of the Commonwealth of The Bahamas, with a registered address located at Suite 104A, Saffrey Square, Nassau, The Bahamas.

(c)     Steiner Leisure's principal office is located care of Steiner Management Services, LLC, 770 South Dixie Highway, Suite 200, Coral Gables, Florida 33146.

(d)     At all relevant times, Mr. Fluxman served as President and Chief Executive Officer of Steiner Leisure. Mr. Boehm served as the company's secretary.

(e)     Prior to December 9, 2015, Steiner Leisure was publicly traded on NASDAQ under the symbol: STNR.

(f)     On December 9, 2015, affiliates of the Catterton Entities, including but not limited to Catterton Partners VII, L.P., Catterton Partners VII Offshore, L.P., and Catterton Partners VII Special Purpose, L.P., made an equity investment in Steiner Leisure for the purpose of causing the Catterton Entities, and other related parties named herein as John Doe Companies 1-10, acquire all of the outstanding shares of Steiner Leisure.

(g)     To effectuate the acquisition, the Catterton Fund formed two new entities:

(1) Nemo Parent, Inc., an international business company incorporated under the laws of the Commonwealth of The

Bahamas formed by investment funds managed by Catterton Management Company, L.L.C.; and

(2) Nemo Merger Sub, Inc. ("Nemo Merger"), is an international business company incorporated under the laws of the Commonwealth of The Bahamas and a wholly-owned subsidiary of Nemo Parent, Inc.

(h) Notably, both Nemo Parent and Nemo Merger were formed solely for the purpose of acquiring Steiner Leisure and consummating the transactions contemplated by the parties' Merger Agreement.

(i) In connection with the acquisition, Nemo Merger and Steiner Leisure were merged into one company, with Steiner Leisure as the surviving company. Thus, upon consummation of the Merger, Steiner Leisure became a wholly-owned subsidiary of Nemo Parent, Inc.

(j) Steiner Leisure's vice-president and assistant secretary is Marc Magliacano. Mr. Magliacano is also the Managing Partner of the Catterton Entities.

17. **Nemo Parent, Inc.**

(a) As noted above, Nemo Parent is an international business company incorporated under the laws of the Commonwealth of The Bahamas formed by investment funds managed by the Catterton Entities.

(b) Nemo Parent is wholly owned by Nemo Investor Aggregator, Limited, a Cayman Islands exempted company. Nemo Parent's Executive Vice-President and Secretary is Mr. Magliacano.

9

(c)    The registered address for Nemo Parent is c/o Lennox Paton Corporate Services Ltd., 3 Bayside Executive Park, West Bay Street, Nassau, The Bahamas.

(d)    The business and mailing address for Nemo Parent is c/o Catterton Management Company LLC, 599 West Putnam Avenue, Greenwich, Connecticut 06830.

(e)    Nemo Parent's President is James Michael Chu, who is also one of Nemo Parent's directors and is the Global Co-CEO and co-founder of the Catterton Entities.

(f)    Nemo Parent's Vice-President is Mr. Maglicano.

18.    **Nemo Investor Aggregator, Limited**

(a)    Nemo Investor Aggregator, Limited ("Nemo Investor") is incorporated under the laws of the Commonwealth of The Bahamas and was formed by investment funds managed by the Catterton Entities.

(b)    The registered address for Nemo Investor Aggregator, Limited is c/o Mourant Ozannes Corporate Services (Cayman) Ltd., 94 Solaris Avenue, PO Box 1348, Camana Bay, Grand Cayman KY1-1108, Cayman Islands.

(c)    The business address and mailing for Nemo Investor Aggregator, Limited is c/o Catterton Management Company LLC, 599 West Putnam Avenue, Greenwich, Connecticut 06830.

(d)    Upon information and belief, Nemo Investor is owned, operated, and/or controlled by the Catterton Entities.

(e)    Mr. Maglicano is the Executive Vice-President and Secretary of Nemo Investor.

(f)    In addition to their roles with Steiner, Messrs. Fluxman and Lazarus also provide services to Nemo Investor and its affiliates.

10

19. **Catterton Management Company, d/b/a L Catterton**

(a)  L Catterton is a Delaware limited liability company, with its principal office located at 599 West Putnam Avenue, Greenwich, CT 06830.

(b)  L Catterton's registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

(c)  L Catterton owns and/or controls the Catterton Entities, SEG Cort, and Steiner, including directing and/or making all decisions relevant to this action with respect to the Catterton Entities, SEG Cort, and Steiner.

20. **John Doe Companies 1-10**

(a)  John Doe Companies 1-10 are fictitious names for entities to be determined in discovery that have exercised dominion and control over the Defendants and/or that, by virtue of their dominion and control over SEG Cort and/or Steiner Education's actions, are jointly and severally liable for SEG Cort and Steiner Educations obligations.

21. **John Doe Individuals 1-10**

(a)  John Doe Individuals 1-10 are fictitious names for individuals to be determined in discovery served as officers, directors, or fiduciaries of SEG Cort and/or Steiner Education and, in that capacity, had fiduciary duties and quasitrust obligations that were breached when they caused SEG Cort and/or Steiner Education to put the "Steiner" and "Cortiva" brands' interests ahead of HHLP's interest.

(b)  Such individuals may include, but cannot yet definitively be determined to include, Alec Haesler, Mr. Fluxman, Mr. Lazarus, Mr. Boehm, and Joseph D'Angelo (each of whom is identified as potentially being in control of SEG Cort and Steiner Education and/or that Defendants' representative testified may have been in control of SEG Cort and Steiner Education).

11

## JURISDICTION AND VENUE

22.     This Court possesses personal jurisdiction over the Defendants pursuant to <u>Rule</u> 4:4-4 insofar as Defendants' activities within the State of New Jersey concerning the Property have given rise to these causes of action.

23.     Venue is proper in Hudson County pursuant to <u>Rule</u> 4:3-2 insofar as the Property, which is the subject of this action, is located within Hudson County.

## BACKGROUND FACTS

24.     Since early 2007, SEG Cort (or its predecessors) have operated a massage therapy school at the Property (the "<u>School</u>").

25.     The School operated on traditional semester-based schedule, with classes running from September to December and from January to June each year.

26.     The School has at all times operated under the "Steiner" and/or "Cortiva" brand name and, in that regard, has been part of a national chain of massage therapy schools.

### The Lease

27.     On January 3, 2007, HHLP, as landlord, entered into a Lease with SEG Cort's predecessor-in-interest Cortiva Education, Inc. ("<u>Cortiva Education</u>").

28.     The initial Lease term was five (5) years and six (6) months, beginning on the Commencement Date (as defined in the Lease).

29.     Pursuant to the Lease, Cortiva Education was obligated to timely pay fixed annual rent of $205,722.0 per annum, a rate of $17,143.50 per month.

30.     Cortiva Education also agreed to pay, among other things and without limitation, additional rent to HHLP including, without limitation, Building Expenses and Tenant's Proportionate Share of taxes (each defined in the Lease).

12

31.     Cortiva Education further agreed to indemnify HHLP from and against "any claims and all loss, cost, liability, damage and/or expense, including, but not limited to reasonable counsel fees, penalties and fines incurred in connection with or arising from (i) any default by Tenant in the observance or performance of any of the provisions, covenants or conditions of this Lease on Tenant's part . . . "

32.     HHLP also had the right to approve, with certain limitations, any proposed assignment of Cortiva Education's obligations under the Lease.

33.     Pursuant to Section 16.01 of the Lease, it shall be an event of default under the Lease if:

(a)     Tenant shall default in the payment of rent or other obligations due under the Lease;

(b)     The Property is abandoned, deserted, or vacated; or

(c)     Tenant or any guarantor of Tenant's obligations shall make an assignment for the benefit of creditors.

34.     Pursuant to Section 16.02 of the Lease, in case of any default, Tenant shall remain and continue to be liable for all rents and additional sums due to HHLP for the balance of the Lease term.

35.     Moreover, pursuant to Section 16.03 of the Lease, "the right of Landlord to recover from Tenant . . . a sum equal to all fixed annual rent and additional rent herein reserved if there shall be no-reletting [of the Property], shall survive the . . . termination hereof."

36.     Section 16.04 provides that "[s]uits or suit for the recovery of . . . damage[s] . . . may be brought by Landlord from time to time at Landlord's election, and nothing herein contained

shall be deemed to require Landlord to await the date on which this Lease or the Term hereof would have expired by limitation had there been no such default by Tenant . . . ."

37.     Moreover, pursuant to Section 16.06 of the Lease, Tenant is obligated to reimburse HHLP for all counsel fees and collection charges incurred or expended by HHLP as a result of Tenant's default.

38.     Section 16.08 provides that "if Tenant fails to pay any monetary items due hereunder within five (5) days after same are due and payable, a late charge of three ($.03) cents for each ONE ($1.00) DOLLAR so overdue shall become immediately due and payable to Landlord as damages in compensation for the additional administrative, bookkeeping and collection expenses incurred by Landlord . . . .  In addition, all such unpaid monetary items shall bear interest at the maximum rate permitted by law from the date such monies were due and payable until the date on which Landlord shall receive payment."

39.     Pursuant to Section 24.02:

> Tenant acknowledges that possession of the demised premises must be surrendered to Landlord at the expiration or sooner termination of the Term of this Lease. If Tenant remains in possession of the demised premises at the expiration or earlier termination of the Term hereof, Tenant, at Landlord's option, shall be deemed to be occupying the demised premises as a tenant from month to month, at a monthly rental equal to one hundred and fifty percent (150%) of the sum of the monthly installment of fixed annual rent payable during the last month of the Term hereof plus all additional rent coming due hereunder. Acceptance by Landlord of rent after the expiration or earlier termination of the Term hereof shall not constitute a consent to a month-to-month tenancy or result in a renewal. In the event of such holdover, Tenant's occupancy of the demised premises, except as aforesaid, shall be subject to all other conditions, previsions and obligations of this Lease, but only insofar as the same are applicable to a month to month tenancy. Such month to month tenancy shall be terminable by Landlord upon one (1) months' notice to Tenant, and if Landlord shall give such notice. Tenant shall quit and surrender the demised premises to Landlord as above provided. In the event that (a) Tenant shall remain in possession of the demised premises following

14

the expiration or earlier termination of the Term hereof and Landlord shall not have elected to deem Tenant to be occupying the demised premises as a tenant from month-to-month or (b) Landlord shall terminate any month-to-month tenancy of the demised premises and Tenant shall fail to quit and surrender the demised premises to Landlord following the termination date as above provided, then, in either such event, Tenant shall be liable to Landlord for all losses, damages, claims, costs and/or expenses incurred by Landlord by reason of Tenant's failure to deliver timely possession of the demised premises to Landlord, provided, Tenant shall not be liable for any consequential or incidental damages so incurred by Landlord, including, without limitation, any losses, damages, claims, costs and/or expenses incurred in connection with or arising from the inability of Landlord to lease and deliver possession of the demised premises, or any portion thereof. to any third party and/or the termination or cancellation of any lease of the demised premises, or any portion thereof to any third party.

40. Article 38 of the Lease provides that its provisions shall bind and inure to the benefit of the respective parties, their heirs, personal representatives, successors, and assigns.

41. The January 3, 3007 Lease was modified by a Modification of Lease, dated March 28, 2007, a Second Modification of Lease dated April 1, 2010, a Third Modification of Lease, dated November 20, 2017 (the "Third Modification"), a Fourth Modification (defined below), and a Fifth Modification (also defined below) (collectively, the "Lease").

42. Following the Third Modification, the term of the Lease was extended such that the Lease did not expire until August 31, 2018.

43. Cortiva Education subsequently assigned the Lease to SEG Cort.

### The Guaranties

44. At or around the time Cortiva Education executed the original Lease, Cortiva Education's parent entity executed and delivered to HHLP a written guaranty of Cortiva Education's obligations thereunder.

45.     In further consideration for, and to induce Landlord to accept the assignment of the

lease to SEG Cort, on November 14, 2017, SEG Cort's parent entity, Steiner Education, executed

a Guaranty of Lease (the "Guaranty").

46.     Pursuant to the Guaranty:

> [Steiner Education] hereby unconditionally and irrevocably
> guarantees to Landlord, its heirs, legal representatives, successors
> and assigns the prompt and timely performance and observance by
> Tenant of all the terms, covenants, conditions, provisions and
> agreements to be performed or observed by Tenant under the Lease
> throughout the term of the Lease and any extension and/or renewal
> thereof, including, but not limited to, the payment of rent and
> additional rent by Tenant at the times and in the manner provided in
> the Lease. This Guaranty shall be construed as a continuing,
> absolute and unconditional guaranty of Tenant's obligations under
> the Lease, without regard to the validity, regularity or enforceability
> of any of the provisions of the Lease. [Steiner Education] further
> agrees to pay any and all expenses which may be paid or incurred
> by Landlord in collecting any or all of the rents and additional rents
> and any other charges due or becoming due under the Lease or under
> this Guaranty and/or enforcing any rights under the Lease or under
> this Guaranty.

47.     Furthermore, the Guaranty provides:

> [Steiner Education] hereby agrees and covenants to Landlord that,
> if at any time during the term of the Lease or any extension and/or
> renewal thereof, Tenant shall default in the due and prompt
> performance of any of the covenants, terms, conditions and
> agreements contained in the Lease on the part of Tenant to be
> performed, [Steiner Education] shall perform such obligation and
> shall pay the sums to be paid thereunder in the manner and at the
> times therein specified and shall pay all damages that may arise as a
> consequence of such breach or nonperformance of any such
> covenant, term, condition and agreement of the Lease. If such
> default is not cured within the applicable time period provided in the
> Lease by either Tenant or [Steiner Education] and thereafter
> Landlord exercises any rights it has under the Lease, at law or in
> equity, including, without limitation, terminating the Lease, sending
> a notice to quit or re-entering the Demised Premises either by force,
> or otherwise, and having possession of the same and/or recovering
> possession thereof by summary proceeding, or otherwise, [Steiner
> Education] agrees that it will immediately pay the Landlord all

amounts due from Tenant under the Lease. Notice(s) to quit, termination(s) of the Lease, entry or re-entry by Landlord, whether had or taken under summary proceedings or otherwise, shall not, in any event, absolve or discharge [Steiner Education] from liability hereunder.

48. In addition, pursuant to the Guaranty:

Any modification of the Lease, or waiver of the performance thereunder, or the giving by Landlord of any extensions of time for the performance of any of the obligations of Tenant, or any acceptance of rent after any default of Tenant, or any forbearance on the part of Landlord, or any failure by Landlord to enforce any of its rights under the Lease, or this Guaranty, or any assignment of the Lease or subletting of the Demised Premises, shall not in any way release [Steiner Education] from liability hereunder, or terminate, affect or diminish the validity of this Guaranty, except to the same extent, but only to such extent, that the liability or obligation of Tenant is so released, terminated, affected or diminished. Notice to [Steiner Education] of acceptance of this Guaranty, or of any such modification, waiver, extension, forbearance or failure or of any or nonpayment by Tenant or of demand for payment and all other notices of every kind and description now or hereafter provided by any statute or rule of law are hereby expressly waived. Landlord may, without notice, assign this Guaranty in whole or in part. [Steiner Education] shall not delegate its obligations under this Guaranty without the prior written consent of Landlord.

49. Furthermore, the Guaranty provides:

[Steiner Education] agrees that in the event Tenant shall become insolvent or shall be adjudicated a bankrupt, or shall file a petition for reorganization, arrangement or similar relief under any present or future provisions of the Bankruptcy Code, or if such a petition filed by creditors of Tenant shall be approved by a court, or if Tenant shall seek or if there shall be sought against Tenant a judicial readjustment of the rights of its creditors under any present or future federal, state or local law, or if a receiver of all or part of its property and assets is appointed by any court, and in any such proceeding the Lease shall be terminated or rejected, or the obligations of Tenant thereunder shall be modified, [Steiner Education] agrees that it will immediately pay the Landlord all amounts for which Tenant is obligated under the Lease. [Steiner Education]'s obligations to make payment in accordance with the terms hereof, shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the

17

> liability of Tenant or its estate in bankruptcy resulting from the operation of any present or future provisions of the Bankruptcy Code or other statute, or from the decision of any court. This Guaranty shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the obligations of Tenant under the Lease are rescinded or must otherwise be restored or returned by Landlord upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Tenant and/or [Steiner Education], or upon or as a result of the appointment of a receiver, intervenor, custodian, conservator of, or trustee or similar officer for, Tenant and/or [Steiner Education] or any substantial part of their property or otherwise, all as though such payments had not been made

50. Notably, "[HHLP] shall not be required, as a condition precedent to making a demand upon [Steiner Education] or to bringing an action against [Steiner Education] upon this Guaranty, to make demand upon, or to institute any action or proceeding at law or in equity against Tenant, any other guarantor or anyone else, or exhaust its remedies against Tenant, any other guarantor or anyone else . . . ."

51. Furthermore, any action concerning the Guaranty or related matters shall be brought in a "federal and/or state court located in, or presiding over, the county in which the Demised Premises are located . . . ."

**Fourth Modification of Lease**

52. On July 30, 2018, SEG Cort LLC entered into a Fourth Modification of Lease (the "Fourth Modification") with HHLP.

53. Pursuant to the Fourth Modification, the lease term was extended for six months, so that the term of the Lease was set to expire on February 28, 2019.

54. Notably, SEG Cort expressly acknowledged in the Fourth Amendment that it had "no right to extend the lease beyond [February 28, 2019] and that all renewal or extension privileges set forth in the Lease have been exhausted and/or waived."

18

55.     The Fourth Modification modified the rent, such that the annual rent was modified to "FIVE HUNDRED TWO THOUSAND FIVE HUNDRED SIXTY and 00/100 ($502,560.00) DOLLARS per annum – FORTY-ONE THOUSAND EIGHT HUNDRED EIGHTY and 00/100 ($41,880.00) dollar per month."

56.     The Fourth Modification was signed by Steiner Education as Guarantor of the obligations of Tenant, with Steiner Education ratifying its obligations as guarantor based on the modified Lease terms.

57.     Notably, the Fourth Modification was entered into by SEG Cort despite its awareness that the extension would not be long enough to cover its students' entire 2018-2019 school year, which would not end until June 2019.

**Fifth Modification of Lease**

58.     As noted above, although the Spring 2019 semester did not end until June 2019, the Fourth Modification of Lease expired on February 28, 2019.

59.     SEG Cort needed to continue operations through the end of June 2019 to avoid significant liability to its then-current students, as well as the bad publicity that an early shut down would cause.

60.     Whether SEG Cort's failure to negotiate a sufficient extension was strategic or negligent, HHLP was not interested in negotiating a short-term extension and, after allowing SEG Cort to remain through March and April 2019 on a holdover basis, insisted that SEG Cort vacate the Property or enter into a full lease extension.

61.     Ultimately, on April 16, 2019, HHLP (as landlord), SEG Cort (as tenant), and Steiner (as guarantor), entered a Fifth Modification of Lease, extending the lease term from May 1, 2019 through April 30, 2020.

62.     Defendants caused SEG Cort and Steiner to execute the Fifth Modification despite knowing that SEG Cort and Steiner possessed neither the intention nor the financial means to pay HHLP for entire lease term.

### The Default

63.     Notwithstanding its obligations under the Lease, in or about June 2019, SEG Cort ceased operating its massage therapy School at the Property.

64.     At or around the same time it stopped operating its business, SEG Cort also failed and refused to pay HHLP amounts due and owing under the Lease.

65.     On July 2, 2019, HLLP sent a formal notice of default to SEG Cort, with a copy of the default notice also being sent to Steiner Education.

66.     To date, SEG Cort has failed and refused to cure the above-referenced breaches. As a result of those continuing breaches, SEG Cort is justly indebted to Landlord for all amounts due and owing under the Lease, which amounts continue to accumulate.

67.     Likewise, Steiner Education has failed and refused to satisfy its Guaranty obligations to HHLP, constituting a material breach of the Guaranty.

68.     HHLP reserves the right to amend its claims to include a calculation of all rents and other charges due and owing under the Lease as of the time of trial.

69.     Since SEG Cort vacated the Property, the space has been listed as available to rent, including on Costar and Loopnet.  The Property has also been shown to all interested parties.

### Assignment for the Benefit of Creditors

70.     On July 5, 2019, SEG Cort and Steiner Education's names were changed to Zory Cort, LLC and Zory Group, Inc., respectively.

20

71.     The reason for the change is that the Catterton Entities, the entities making all the decisions for SEG Cort and Steiner Education, "did not want to have a public record tying the Steiner or SEG name to these proceedings."

72.     From the Catterton Entitles' perspective, this made sense as the Steiner brand was continuing to be used separate and apart from SEG Cort.

73.     Consistent with the Catterton Entities' apparent strategy, on July 11, 2019, SEG Cort, Steiner Education, and various related entities filed the ABC Proceeding in Florida state court, bearing Lead Case No.: 2019-020646-CA-01, seeking to wind down the entities' operations. It appears that HHLP will receive little, if any, recovery through the ABC.

74.     Through testimony provided by Defendants' corporate representative in the ABC Proceeding, HHLP learned that the Steiner schools had long been experiencing financial difficulties and that since the end of 2018, more than five months *before* the Fifth Amendment was signed.

75.     As a result, in early 2019, SEG Cort's private equity owners, including the Catterton Entities, retained the services of Carl Marks Advisors, a financial consulting firm, to assist with restructuring the Steiner branded companies and their debt.

76.     In fact, Mr. D'Angelo, a partner with Carl Marks Advisors, was put in place as the Chief Restructuring Officer for SEG Cort and Steiner Education.

77.     In his capacity as Chief Restructuring Officer, Mr. D'Angelo signed the Fifth Modification to the Lease and the Guaranty on behalf of SEG Cort and Steiner. This was, on information and belief, at the direction of the Catterton Entities, which Defendants' representative described in the ABC Proceeding as "the folks that really make a lot of the decisions."

21

78.     Regardless, Mr. D'Angelo was well aware when he signed the Fifth Modification that SEG Cort and Steiner Education had no intention or ability to honor the obligations set forth therein.

79.     In addition to misrepresenting SEG Cort and Steiner's intentions with respect to the Fifth Amendment, it is also clear that Defendants ignored corporate formalities and impermissibly exercised complete dominion and control over SEG Cort and Steiner—grossly undercapitalized entities—in an effort to escape liability.

80.     By reason of Defendants' fraudulent and deceptive conduct, empty promises, and other acts of malfeasance, HHLP seeks, among other relief, a judgment awarding (i) compensatory, consequential, and punitive damages, interest, attorney's fees and cost; and (ii) a declaration that the Catterton Entities have abused the corporate form and that SEG Cort and Steiner Education serve as their alter egos, thus resulting in joint and several liability.

### FIRST COUNT
### (Fraud – All Defendants)

81.     HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

82.     Between February and April 2019, Defendants, acting in their own capacity and as representatives of SEG Cort, represented, promised, and assured (or caused other Defendants to represent, promise, and assure) HHLP that SEG Cort had the present intention and financial ability to fulfill its obligations under the Lease as modified by the Fifth Modification.

83.     For example, and without limitation, SEG Cort's representation in the Lease (as modified by the Fifth Modification) that it would timely pay the fixed-annual rent was false and misleading when made. Indeed, SEG Cort had no intention or ability to make such payments.

22

84.     At the time Defendants made these representations and/or caused these representations to be made, they knew same were false.

85.     In reality, Defendants' were well-aware that Steiner and SEG Cort were facing significant financial difficulties and, before the Fifth Modification was signed, Defendants had already determined to close the school operated by SEG Cort and to wind down SEG Cort and Steiner's operations.

86.     Indeed, at the time the Fifth Modification was signed, both SEG Cort and Steiner lacked the financial wherewithal to satisfy their debts.

87.     The Catterton Defendants were in full control of SEG Cort and Steiner and caused both entities to execute the Fifth Modification so as to protect the Catterton Defendants' interests in the Steiner / Cortiva brand.

88.     Likewise, Mr. D'Angelo, who signed the Fifth Modification on behalf of SEG Cort and Steiner, was well aware before he signed the documents that neither entity would operate (or was capable of continuing to operate) as a going concern for the duration of the lease.

89.     Indeed, each and every Defendant was well aware that neither SEG Cort nor Steiner had the intention or ability to fulfill their obligations under the Fifth Amendment.  Nevertheless, each of the Defendants caused SEG Cort and Steiner to misrepresent their intentions to HHLP.

90.     In reasonable reliance on Defendants' promises and assurances, HHLP entered into the Fifth Modification under the false belief that SEG Cort and/or Steiner would ultimately honor their commitments.

91.     Defendants' promises and assurances, including causing SEG Cort and Steiner to execute the Fifth Modification, were designed solely to fraudulently induce HHLP into executing

the Fifth Modification so that SEG Cort could keep its school open through the end of the Spring 2019 semester.

92. Defendants' conduct, as foresaid, was willful, wanton and in reckless disregard of HHLP's rights and was otherwise wrongful.

93. By virtue of Defendants' deceitful conduct and affirmative misrepresentations, HHLP has and will continue to suffer substantial damages.

**WHEREFORE,** Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants Zory Cort LLC (f/k/a SEG Cort LLC), Zory Group, Inc. (f/k/a Steiner Education Group, Inc.), Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, Catterton Management Company, L.L.C., d/b/a L Catterton, John Doe Companies 1-10, and John Doe Individuals 1-10, awarding:

      (a)    Compensatory, consequential and incidental damages;

      (b)    Punitive damages;

      (c)    Interest;

      (d)    Attorneys' fees;

      (e)    Costs of suit; and

      (f)    Such other and further relief as the Court deems just and equitable under the circumstances.

**SECOND COUNT**
**(Breach of the Lease – Zory Cort, LLC (f/k/a SEG Cort, LLC))**

94.     HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

95.     The Lease constitutes a valid and enforceable agreement by and between HHLP and SEG Cort pursuant to which SEG Cort was obligated to pay, among other things, fixed annual rent and other charges through the term of the Lease.

96.     The term of the Lease, as modified by the Fifth Amendment, was supposed to run through April 30, 2020.

97.     In connection with the ABC Proceeding, the Lease was deemed "rejected."

98.     Notwithstanding its obligations under the Lease, SEG Cort has failed and refused to pay to HHLP the monies due and owing to it under the Lease, constituting a material breach of the Lease.

99.     Although SEG Cort is, or may soon be, deemed insolvent, it has nevertheless been named in this action to ensure compliance with the Rules of Court and to avoid waiver of any rights and claims.

100.    SEG Cort's breach of the Lease has been willful, wanton, and in reckless disregard of HHLP's rights.

101.    As a direct and proximate result of said breach, HHLP has and will continue to suffer substantial monetary damages.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendant, Zory Cort, LLC, awarding:

        (a)     Compensatory, consequential and incidental damages;

        (b)     Punitive damages;

(c)    Interest;

(d)    Attorneys' fees;

(e)    Costs of suit; and

(f)    Such other and further relief as the Court deems just and equitable under

the circumstances.

## THIRD COUNT
### (Breach of the Lease (Piercing the Corporate Veil) – SEG Cort, LLC, Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, Catterton Management Company, L.L.C., d/b/a L Catterton, and  John Doe Companies 1-10)

102.    HHLP repeats and realleges the allegations contained in the preceding paragraphs
of the Complaint as if set forth at length herein.

103.    As set forth in the Second Count, which is incorporated herein by reference, the
Lease constitute a valid and enforceable contract by and between HHLP and SEG Cort.

104.    Moreover, SEG Cort has failed to and refused to honor its contractual obligations,
in breach of the Lease.

105.    SEG Cort's breach has resulted in substantial damages to HHLP.

106.    As set forth above, however, since the Catterton Entities acquisition of Steiner
Leisure, its subsidiaries, including SEG Cort, have been dominated and controlled by the Catterton
Entities, which have otherwise disregarded SEG Cort's corporate form.

107.    Moreover, SEG Cort has been insufficiently capitalized and has, at all relevant
times, had insufficient assets to cover its debts as they become due.

108.    SEG Cort's officers and directors are not acting in the entity and its creditor's best
interests.  Instead, the officers and directors have at all times been acting on behalf, or controlled
by, the Catterton Entities.  Indeed, the Catterton Entities are "the folks that really make a lot of the
decisions" for SEG Cort.

26

109.    Moreover, as set forth in the First Count, which is incorporated herein by reference, the Catterton Entities caused SEG Cort to make fraudulent representations with respect to the Fifth Modification.   This fraud was undertaken to protect the Catterton Entities' interests in the Steiner/Cortiva brand generally, and served no legitimate purpose whatsoever for SEG Cort.

110.    Consequently, it is proper and just for this Court to pierce the corporate veil of SEG Cort and hold Steiner Leisure, Nemo Parent., Nemo Investor, L Catterton, and  John Doe Companies 1-10 jointly and severally liable for SEG Cort's obligations to HHLP.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants, SEG Cort, LLC, Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, Catterton Management Company, L.L.C., and John Doe Companies 1-10, awarding:

(a)    Compensatory, consequential and incidental damages;

(b)    Punitive damages;

(c)    Interest;

(d)    Attorneys' fees;

(e)    Costs of suit; and

(f)    Such other and further relief as the Court deems just and equitable under the circumstances.

## FOURTH COUNT
### (Breach of the Guaranty – Zory Group, Inc. (f/k/a Steiner Education Group, Inc.))

111.    HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

27

112.    The Guaranty constitutes a valid and enforceable agreement by and between HHLP and Steiner Education pursuant to which Steiner Education was obligated to pay, without the need to seek recourse from SEG Cort, any of SEG Cort's obligations under term of the Lease.

113.    As set forth above, SEG Cort has failed and refused to pay to HHLP the monies due and owing to it under the Lease, constituting a material breach of the Lease.

114.    Notwithstanding its obligations under the Guaranty, however, Steiner Education has failed and refused to pay to HHLP the monies due and owing to it under the Lease, constituting a material breach of the Guaranty.

115.    Steiner Education's breach of the Guaranty has been willful, wanton, and in reckless disregard of HHLP's rights.

116.    As a direct and proximate result of said breach, HHLP has and will continue to suffer substantial monetary damages.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants, Zory Group, Inc. (f/k/a Steiner Education Group, Inc.), awarding:

(a)     Compensatory, consequential and incidental damages;

(b)     Punitive damages;

(c)     Interest;

(d)     Attorneys' fees;

(e)     Costs of suit; and

(f)     Such other and further relief as the Court deems just and equitable under the circumstances.

## FIFTH COUNT
### (Breach of the Guaranty (Piercing the Corporate Veil) – Zory Group, Inc., Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, Catterton Management Company, L.L.C., d/b/a L Catterton, and John Doe Companies 1-10)

28

117. HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

118. As set forth in the Fourth Count, above, the Guaranty constitute a valid and enforceable contract by and between HHLP and Steiner Education.

119. Moreover, Steiner Education has failed to and refused to honor its contractual obligations, in breach of the Lease.

120. Steiner Education's breach has resulted in substantial damages to HHLP.

121. As set forth above, however, since the Catterton Entities acquisition of Steiner Leisure, its subsidiaries, including Steiner Education, have been dominated and controlled by the Catterton Entities, which have otherwise disregarded Steiner Education's corporate form.

122. Moreover, Steiner Education has been insufficiently capitalized and has, at all relevant times, had insufficient assets to cover its debts as they become due.

123. Steiner Education's officers and directors are not acting in the entity and its creditor's best interests. Instead, the officers and directors have at all times been acting on behalf, or controlled by, the Catterton Entities. Indeed, the Catterton Entities are "the folks that really make a lot of the decisions" for Steiner Education.

124. Moreover, as set forth in the First Count, which is incorporated herein by reference, the Catterton Entities caused Steiner Education to make fraudulent representations with respect to the Fifth Modification. This fraud was undertaken to protect the Catterton Entities' interests in the Steiner/Cortiva brand generally, and served no legitimate purpose whatsoever for Steiner Education.

125.    Consequently, it is proper and just for this Court to pierce the corporate veil of Steiner Education and hold Steiner Leisure, Nemo Parent., Nemo Investor, L Catterton, and John Doe Companies 1-10 jointly and severally liable for Steiner Education's obligations to HHLP.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants, Zory Group, Inc., Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, Catterton Management Company, L.L.C., and John Doe Companies 1-10, awarding:

       (a)     Compensatory, consequential and incidental damages;

       (b)     Punitive damages;

       (c)     Interest;

       (d)     Attorneys' fees;

       (e)     Costs of suit; and

       (f)     Such other and further relief as the Court deems just and equitable under the circumstances.

## SIXTH COUNT
### (Breach of Fiduciary Duty - John Doe Individuals 1-10)

126.    HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

127.    In late 2018 and into early 2019, SEG Cort and Steiner Education entered into the zone of insolvency.

128.    At that time, for example, SEG Cort and Steiner Education's owners, officers, and directors, were meeting to discuss the "precarious financial situation of the[] entities . . . ."

129.    Indeed, each of the company's liabilities greatly exceeded their assets.

30

130. Shortly after signing the Fifth Modification, SEG Cort was made a party to the ABC Proceeding because, among other things, the "nature [of the Company's] obligation[s] versus projected income were not favorable."

131. As evidenced by their failure to pay their obligations under the Lease and Guaranty, each of the companies was unable to meet its fixed financial obligations as they became due and neither company had sufficient capital to finance future operations.

132. Despite awareness of the Company's precarious financial situation in late 2018, the company's directors, officers, and other fiduciaries including, without limitation, John Does 1-10, caused SEG Cort and Steiner Education to sign the Fifth Modification in April 2019.

133. Each of the company's directors, offers, and other fiduciaries had a responsibility to each of the company's creditors, including HHLP.

134. In that regard, the officers, directors, and fiduciaries were legally precluded from preferring certain creditors over HHLP.

135. Even more importantly however, the officers and directors were legally precluded from preferring SEG Cort and Steiner Education's interests to that of HHLP.

136. In that regard, the directors and officers had a legal obligations not to deepen the company's insolvency by fraudulently taking on additional debt in the form of the Fifth Modification.

137. Even if the Fifth Modification had some benefit to the company, therefore, it cannot in any way be justified as a legitimate exercise of John Does 1-10's duties to HHLP.

138. By virtue of the foregoing, John Does 1-10's violated their fiduciary and quasitrust duties to HHLP, in contravention of the law.

31

139. John Does 1-10's actions were willful, wanton, and in reckless disregard for HHLP's rights.

140. John Does 1-10's actions, as aforesaid, have cause HHLP to incur substantial damages.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants, and John Doe Individuals 1-10, awarding:

(a)     Compensatory, consequential and incidental damages;

(b)     Punitive damages;

(c)     Interest;

(d)     Attorneys' fees;

(e)     Costs of suit; and

(f)     Such other and further relief as the Court deems just and equitable under the circumstances.

## SEVENTH COUNT
### (Declaratory Judgment)

141. HHLP repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if set forth at length herein.

142. As set forth in the First through Sixth Counts, which are incorporated herein by reference, the Catterton Defendants have exercised complete dominion and control over SEG Cort and Steiner Education.

143. Indeed, the Catteron Defendants have completely disregarded SEG Cort and Steiner Education's corporate form.

144. Moreover, the Catterton Defendants have caused SEG Cort and Steiner Education to be grossly undercapitalized.

32

145. As a result of the foregoing, it is proper and just to hold the Catterton Defendants jointly and severally liable for SEG Cort and Steiner Education's liabilities, described above.

146. Thus, an actual controversy has arisen and now exists between HHLP, on the one hand, and Defendants, on the other hand, concerning the Catterton Defendants' liability for SEG Cort and Steiner Education's failure and refusal to pay HHLP the amounts due and owing under the Lease and Guaranty.

147. A judicial declaration is necessary and appropriate at this time to protect HHLP's rights and to compel the Catterton Defendants to take responsibility for the actions of SEG Cort and Steiner Education.

**WHEREFORE**, Plaintiff, Hoboken Holdings, L.P., hereby demands judgment against Defendants, Steiner Leisure Limited, Nemo Parent, Inc., Nemo Investor Aggregator, Limited, and Catterton Management Company, L.L.C., d/b/a L Catterton:

(a) Declaring that the Catterton Entities, individually and collectively, are the alter egos of SEG Cort and/or Steiner Education, and thus are jointly and severally liable to HHLP for all amounts due and owing under the Lease and Guaranty (both as modified by the Fifth Modification);

(b) Attorneys' fees;

(c) Costs of suit; and

(d) Such other and further relief as the Court deems just and equitable under the circumstances.

<u>**DESIGNATION OF TRIAL COUNSEL**</u>

Pursuant to the provisions of <u>Rule</u> 4:25-4, this court is hereby advised that Michael R. Yellin, Esq. is designated as trial counsel for plaintiff Hoboken Holdings, L.P.

## CERTIFICATIONS

I certify that the foregoing matter in controversy is not the subject of a pending action or arbitration proceeding, nor is any action or arbitration proceeding contemplated at this time, other than those certain assignment for the benefit of creditors actions, pending in The Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, consolidated under lead Case Name, Zory Cort, LLC, Assignor, to: Michael I. Goldberg, Assignee, bearing Lead Case No., 2019-020646-CA-01 seeking to wind down the entities' operations. I further certify that, to the best of my knowledge, no other parties need be joined in this matter, other than John Doe Companies 1-10 and John Doe Individuals 1-10, described in the Complaint, and who will be added to this case once identified during discovery.

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

COLE SCHOTZ P.C.
Attorneys for Plaintiff,
Hoboken Holdings, L.P.

By: */s/ Michael R. Yellin*
Michael R. Yellin

DATED: January 2, 2020



484450

| | |
|---|---|
| **Plaintiff**<br>HOBOKEN HOLDINGS, L.P. | **SUPERIOR COURT OF NEW JERSEY**<br>**LAW DIVISION:**<br>**HUDSON COUNTY** |

vs

**Defendant**
ZORY CORT LLC (F/K/A SEG CORT LLC), ET AL

DOCKET NO.  HUD-L-000002-20

**Person to be served:** CATTERTON MANAGEMENT COMPANY
LLC
**Address:**
599 WEST PUTNAM AVENUE
GREENWICH CT 06830

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

**Attorney:**

COLE SCHOTZ, P.C.
25 MAIN STREET P.O. BOX 800
HACKENSACK NJ 07602-0800

**Papers Served:**
SUMMONS & COMPLAINT

---

**Service Data:**

Served Successfully __X__   Not Served _____   Date: __01/08/2020__   Time: __3:45PM__   Attempts: __1__

_____   Delivered a copy to him/her personally

Name of Person Served and relationship/title

_____   Left a copy with a competent household
member over 14 years of age residing therein at place of abode.

David Mc Pherson

__X__   Left a copy with a person authorized to accept
service, e.g. managing agent, registered agent, etc.

Chief legal officer /
Managing Agent

**Description of Person Accepting Service:**

Age: __57__   Height: __6'1"__   Weight: __180__   Hair: __Gray__   Sex: __Male__   Race: __White__

**Non-Served:**

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time
_____ Date _____ Time
_____ Date _____ Time
( ) Other:_____   Comments or Remarks_____

I, __Eric Rubin__ , was at
time of service a competent adult not having a direct
interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

Subscribed and Sworn to me this
__9th__ day of __January, 2020__

**AMY J. CHANTRY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 3/31/2023

_____
Notary Signature

_____   __1/9/2020__
Signature of Process Server   Date

---

DGR LEGAL, INC.
1359 Littleton Road, Morris Plains, NJ 07950-3000
(973) 403-1700  Fax (973) 403-9222

Work Order No.   **484450**

File No.   **HUD-L-000002-20**

**SUMMONS**

Attorney(s) Michael R. Yellin, Esq. (Atty ID: 014712008)

Office Address  Cole Schotz P.C.

Town, State, Zip Code  25 Main Street, Hackensack, NJ
07601

Telephone Number  201-525-6258

Attorney(s) for Plaintiff  Hoboken Holdings, L.P.

HOBOKEN HOLDINGS, L.P.

_____
            Plaintiff(s)

        vs.

ZORY CORT LLC, et al.

_____
            Defendant(s)

# Superior Court of New Jersey

Hudson _____ County

Law _____ Division

Docket No: HUD-L-000002-20 _____

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

    If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

    If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

                                        /s/ Michelle M. Smith
                                _____
                                      Clerk of the Superior Court

DATED:  01/02/2020

Name of Defendant to Be Served:  Catterton Management Company L.L.C.

Address of Defendant to Be Served:  599 West Putnam Avenue, Greenwich, Connecticut 06830

Revised 11/17/2014, CN 10792-English (Appendix XII-A)



SUPERIOR COURT OF NEW JERSEY
LAW DIVISION:
HUDSON COUNTY

**Plaintiff**
HOBOKEN HOLDINGS, L.P.

vs

**Defendant**
ZORY CORT LLC (F/K/A SEG CORT LLC), ET AL

DOCKET NO.  HUD-L-000002-20

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

Person to be served:  NEMO INVESTOR AGGREGATOR, LIMITED
C/O CATTERTON MANAGEMENT COMPANY LLC
Address:
599 WEST PUTNAM AVENUE
GREENWICH CT 06830

Attorney:
COLE SCHOTZ, P.C.
25 MAIN STREET P.O. BOX 800
HACKENSACK NJ 07602-0800
Papers Served:
SUMMONS & COMPLAINT

Service Data:

Served Successfully __X__     Not Served _____     Date: _01/08/2020_     Time: _3:45PM_ Attempts: __1__

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household member over 14 years of age residing therein at place of abode.

__X__ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship/title

_David McPherson_
_Chief Legal Officer/_
_Managing Agent_

Description of Person Accepting Service:

Age: _57_   Height: _6'1"_   Weight: _180_   Hair: _Gray_   Sex: _Male_   Race: _White_

Non-Served:

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time _____
                     _____ Date _____ Time _____
                     _____ Date _____ Time _____

( ) Other:_____   Comments or Remarks_____

Subscribed and Sworn to me this
__9th__ day of __January, 2020__

**AMY J. CHANTRY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 3/31/2023

_____
Notary Signature

I, _Eric Rubin_ , was at time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____   01/09/2020
Signature of Process Server        Date

DGR LEGAL, INC.
1359 Littleton Road, Morris Plains, NJ 07950-3000
(973) 403-1700  Fax (973) 403-9222

Work Order No.  484449

File No.  HUD-L-000002-20

## SUMMONS

Attorney(s) <u>Michael R. Yellin, Esq. (Atty ID: 014712008)</u>

Office Address <u>Cole Schotz P.C.</u>

Town, State, Zip Code <u>25 Main Street, Hackensack, NJ</u>
<u>07601</u>

Telephone Number <u>201-525-6258</u>

Attorney(s) for Plaintiff <u>Hoboken Holdings, L.P.</u>

HOBOKEN HOLDINGS, L.P.

_____

Plaintiff(s)

vs.

ZORY CORT LLC, et al.

_____

Defendant(s)

| |
|---|
| **Superior Court of New Jersey** |

<u>Hudson</u>        County

<u>Law</u>        Division

Docket No: <u>HUD-L-000002-20</u>

## CIVIL ACTION
## SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
Clerk of the Superior Court

DATED: <u>01/02/2020</u>

Name of Defendant to Be Served: <u>Nemo Aggregator, Limited c/o Catterton Management Company LLC</u>

Address of Defendant to Be Served: <u>599 West Putnam Avenue, Greenwich, Connecticut 06830</u>

Revised 11/17/2014, CN 10792-English (Appendix XII-A)



**484448**

Plaintiff
**HOBOKEN HOLDINGS, L.P.**

vs

Defendant
**ZORY CORT LLC (F/K/A SEG CORT LLC), ET AL**

Person to be served: **NEMO PARENT, INC.**
C/O CATTERTON MANAGEMENT COMPANY LLC
Address:
**599 WEST PUTNAM AVENUE
GREENWICH CT 06830**

Attorney:
**COLE SCHOTZ, P.C.
25 MAIN STREET P.O. BOX 800
HACKENSACK NJ 07602-0800**
Papers Served:
SUMMONS & COMPLAINT

**SUPERIOR COURT OF NEW
JERSEY
LAW DIVISION:
HUDSON COUNTY**

DOCKET NO. **HUD-L-000002-20**

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

---

Service Data:

Served Successfully ___X___    Not Served _____    Date: _01/18/2020_  Time: _3:45PM_  Attempts: ___1___

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household
member over 14 years of age residing therein at place of abode.

__X__ Left a copy with a person authorized to accept
service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship/title

_David McPherson_
_Chief legal officer_
_Managing Agent_

Description of Person Accepting Service:

Age: _57_  Height: _6'1"_  Weight: _180_  Hair: _Gray_  Sex: _Male_  Race: _White_

Non-Served:

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time
                    _____ Date _____ Time
                    _____ Date _____ Time

( ) Other:_____  Comments or Remarks_____

Subscribed and Sworn to me this
___9th___ day of _January, 2020_

**AMY J. CHANTRY**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES 3/31/2023

_Amy Chantry_
Notary Signature

I, _Eric Rubin_ , was at
time of service a competent adult not having a direct
interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

_ER_                    _01/09/2020_
Signature of Process Server          Date

---

**DGR LEGAL, INC.**
**1359 Littleton Road, Morris Plains, NJ 07950-3000**
**(973) 403-1700  Fax (973) 403-9222**

Work Order No. **484448**

File No. **HUD-L-000002-20**

## SUMMONS

Attorney(s) <u>Michael R. Yellin, Esq. (Atty ID: 014712008)</u>

Office Address <u>Cole Schotz P.C.</u>

Town, State, Zip Code <u>25 Main Street, Hackensack, NJ</u>
<u>07601</u>

Telephone Number <u>201-525-6258</u>

Attorney(s) for Plaintiff <u>Hoboken Holdings, L.P.</u>

HOBOKEN HOLDINGS, L.P.

_____

          Plaintiff(s)

      vs.

ZORY CORT LLC, et al.

_____

          Defendant(s)

## Superior Court of New Jersey

<u>Hudson</u>          County

<u>Law</u>          Division

Docket No: <u>HUD-L-000002-20</u>

# CIVIL ACTION
# SUMMONS

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

/s/ Michelle M. Smith
_____
Clerk of the Superior Court

DATED: <u>01/02/2020</u>

Name of Defendant to Be Served: <u>Nemo Parent, Inc. c/o Catterton Management Company LLC</u>

Address of Defendant to Be Served: <u>599 West Putnam Avenue, Greenwich, Connecticut 06830</u>

Revised 11/17/2014, CN 10792-English (Appendix XII-A)